Thank you. Madam Clerk, please call the first case. 113-3954, Jacob Haltom v. Senator Steve Nelson. Counsel, you may proceed. May it please the Court. Good morning, Your Honors. Your Honor, Richard Alexey on behalf of the petitioner Jacob Haltom. Mr. Haltom, as you know from reading the brief, suffered an agreed, stipulated, accepted accident. He suffered an accident to his low back moving a 300-pound patient. He went for treatment, conservative in nature, consulted with an orthopedic spine surgeon, and was released to return to work by that surgeon, Dr. Miz, with restrictions that the doctor characterized as light. In this decision by the Commission, it appears that what they apply in terms of the definition of restrictions as light is it's the same precision as Greenwich Mean Time measured by an atomic clock. So if you're at light duty, and if you look at the revelation in terms of physical therapy annotations and documentation of physical ability under the light, medium, sedentary, etc., it's a continuum. In context, it's a measure of what a person can do in terms of a range of physical demands. In any event, he returns to work with Dr. Miz's work order in hand. He's placed back to work, and he successfully completes those tasks, despite this admonition by his doctor for a period of two years. Then his employer decides, wait a minute, we need to take a look at this. And there's no real evidence because the woman who was more directly in charge of him wasn't called to testify, and I mentioned in my brief that she was present, but she didn't testify. In any event, they direct him by email to go back to Dr. Miz, get a revised disability note or status in terms of restrictions, and they provide him for the first time with a job description. Takes the job description, he goes to Dr. Miz. Dr. Miz revises his restrictions in terms of average daily activities of living, in terms of stooping and squatting and so on, and he returns from that visit to the doctor for which they wouldn't pay even though they mandated that he go, and they summarily decide, you can't do this job. You can't accommodate him. So he comes to me and he says, I don't think that this makes sense. I got hurt on the job. I had this problem. I have a new disruption of the disc from my previous injury, which I'm going to talk about in a minute. So I take the case. We file a 19B. We have a conference. This is unrebutted. And the attorney for the insurance company agrees that this man should be entitled to vocational rehabilitation, and certainly he should be entitled to maintenance while he pursues that activity. Over the next period of time, he does that with a certified voc specialist, and everything is going along. He's making an effort. There's discussions about perhaps cross-training or moving into another area. In fact, he even gets an interview at Ford Motor Company, and, of course, the first thought would be, well, if he's got these restrictions, what's he going to do at Ford? But, again, as you've seen in previous cases, people are sent anywhere just to get an interview to see if maybe they can get their foot in the door. Well, he not only gets his foot in the door with an interview, but he also goes for a preemployment physical. Somehow he comes under the impression, he's told or hears or defines that he is cleared to go back to this job at Ford, whatever it was, it's not been defined, but he's never offered a job. All of a sudden, there's, well, not all of a sudden, but during the course of this activity, there's a change in arbitrators, and lo and behold, we're not going to pay him more. We don't think he's entitled. We don't think that there is, in fact, a need for us to comply with 8A and the vocational rehabilitation mandate which is related to this injury. So, we go to litigation, and prior to that, there's a subpoena served to obtain his prior employment records from a railroad, CSX, where he had suffered a prior injury. It's not covered under workers' compensation. There's not a question of whether there's any credit due or anything like that. I file an objection to that based upon a longstanding theory in Illinois law that there is no discovery. My motion to quash was denied. There's no record. There's no discussion, no way I can repeat to you or share with you what the arguments were made or what the ruling was other than denied. So, now they have access to records which, in my mind, maybe I've been doing this too long, no discovery means no discovery. The rule isn't sometimes you get discovery. The rule isn't, well, in certain cases you should be able to get stuff that may or may not be relevant. Phishing is okay sometimes. At least that's the tenor of this objection. Well, lo and behold, what did they find? They find that he had an accident while on the railroad. They determined that they find that there was a settlement because of this accident. Again, remember, not anywhere near the umbrella of workers' compensation law. But what was interesting was the fact that there was a discussion and a questioning, a query, a series of inquiries made by the arbitrator with regard to the financial elements of that settlement. I would love to assume, I would love to believe, and I would like to think that an arbitrator at the Illinois Workers' Compensation Commission has the same ability as a judge who's been experienced in trying cases and hearing evidence for a long period of time because, as we know, in that setting, judges are given broad discretion and they have the ability, as we've seen in both appellate and Supreme Court decisions, to ignore or accept or diminish the impact of what may have been improper evidence. And, of course, the ruling is harmless error. Error, but harmless. I don't believe, and I don't think that this panel should accept, that this arbitrator allowing evidence to be subpoenaed and then introduced of a financial nature of some prior accident, I don't think that should be allowed. Well, let's assume there was error, Mr. Alexey. Let's assume you're correct. The arbitrator improperly relied on the evidence. Can you point to us where in the record that the commission improperly relied on the evidence in making its decision? Well, you know, see, that's the interesting thing about these commission decisions. You know, in your decisions, you always write the commission the commission, and I respect that. But here's the reality of this, at least in my limited time there. When an arbitrator makes a determination, you have three human beings who sit without any knowledge of the content of the record or the case law or whatever because they have attorneys who draft all the summaries who propose what should be concluded. And if you take a measurement from 2011, a very interesting year in workers' compensation pantheon, until now, you will see a significant erosion of the administration of justice and, if you will, what I would consider the departure from the simple and summary process that workers' compensation is supposed to have. And what's interesting is you compare those decisions for that four-year period and go back to the four-year period before that. You don't have the time to do that, so let me just suggest to you there was a significant difference in mirror-like cases between what was going on before and what was going on after. But isn't that directly related to who's doing the appointing of the commissioners? I beg your pardon? Isn't that directly related to who's doing the appointing of the commissioners? Absolutely, because what we have seen is an increase in the politicization under Section 13 years ago when 13 was amended, and we had to have a bifurcated divide of political parties in terms of commissioners. We use the euphemism management, labor, public. Well, again, it's interesting because, well, that's the horror of the record, so I won't waste your time with that kind of a dictation. But the point is this. One question that must be answered and was not answered by the commission, even though I begged them to answer it, was whether or not the obtaining of those records from CSX was appropriate. Because we don't know what the arbitrator would have found or heard or listened to or at least even reviewed if he had not latched on to that prior settlement and the amount thereof and the annuity structure and so on, where he asked four or five questions. Oh, my objection. So we don't know. Okay, so we move on. We forget the CSX for a minute. No question the man had an accident. They stipulated it. No question that for an extended period of time they paid compensation. And I know the old saw about, well, the fact that we pay compensation or we pay for medical bills should never be construed as an admission of liability. But let's face it. Let's deal with the real world. If an insurance company at the point of contact where we're going to litigate this issue under a 19B umbrella as the record reflects and they concede that point, you know, in the courtroom you'd get a minute order, right? You'd have the judge enter an order that would then bind the parties as to what issues were resolved or extinguished at that hearing, pretrial, whatever we want to give it. At the commission, if I file a 19B and I announce, no, they surrender and they start paying, and lo and behold, the evidence shows that they've been paying for a period of time, isn't that somewhat of an admission? Doesn't that have some weight to determine whether or not this man is in fact protected by the statute? Or is it the case that, hey, if we get lucky and we find that this guy had a huge settlement and we don't even bother to get an expert doctor to tell us about the nature of those injuries back in 2004 so we can bring them to the front of the arbitrator when we litigate this case so at least he can posit the opinion that, hey, the guy had the injury in 2004, he had a fusion surgery, he was then restricted to return to work by his physician with the admonishment that he should go to work hardening so that he can improve his physical abilities and for whatever reason, we don't know, he didn't do that, except he did it by himself. And the record, unrebutted, for two years he worked five days a week with a personal trainer to build up his strength. There was no indication, no testimony from the respondent in this case that said we had to accommodate, he wasn't able to do things, he had difficulties, there's nothing to reflect that this man was anything during the tenure of his employment with this firm capable of doing all duties until he encountered that 300 pound patient. This decision, this decision, I believe is fairly flawed because of the nature of the discovery that was engaged in. The fact that there was an inference drawn on the conclusion that he had a transitory aggravation of his pre-existing condition when the medical records do not reflect that. He had a fusion in L4-5, L5-S1, he has a protrusion in L3-4, different level. When he goes back to Dr. Miz, Dr. Miz tinkers with the restrictions imposed but he puts it under the umbrella of light. The commission seizes on the fact that, well, he was on light duty based upon that CSX accident. So if he's on light duty now, nothing's changed. That's ridiculous. And here's why it's ridiculous. Because if you just compare the reports of the MRIs, if you compare the writings of Dr. Miz with regard to the degree of restrictions he imposed on this man it is evidently clear that this protrusion is impeding his ability to meet the physical demands and in fact by mandate of his own employer, they discharge him. Why? They can't accommodate anymore. They were accommodating before the injury, they were accommodating for two years after the injury  What would be the reasonable inference that I could suggest in that scenario? To me, I'm biased, I admit it, I would infer that obviously this guy's been having problems trying to meet the demands of his job and somebody at the top in HR is saying hey, we've got to do something about this, so they send him a missive and say go back to your doctor, here's a job description, see if your doctor will allow you to do this. And then without any ceremony, they send him an email or give him a call and say I'm sorry, you're done, see ya, you can't handle this job. Is there any evidence in the record that he was having difficulty with his job duties prior to this? No, he testified that he was able to perform the duties, that there were some things that he had to get assistance with but there was no testimony other than that small area where, in fact there was none from the employer where he had, you know, from time to time. Did you lift any more 300 pound patients? No. So, he avoided that activity. This decision needs to be reversed, the decision needs to be remanded to the commission because clearly the evidence says, A, discovery was engaged in, improper documentation was submitted into evidence over objection there was no expert witness who testified that the old maladies, the old problems in his spine could in any effect be responsible for what his condition was more than five years later. 8A is clear, 8A stands for the proposition that they have a responsibility not only for medical but also vocational rehabilitation. It's a stipulated injury, their own clinic where he went originally for treatment showed that it was a work injury, concluded that there was causal connection, recommended that he see a surgeon and then when he was incapable of doing the job based upon a decision of his employer no evidence showing what difficulties he had or whatever other than his willingness by his testimony to keep doing that job. How do we abandon that man? Do we then say to the people of Illinois who work for a living and come under this statute and say, look, if you had a prior injury, forget all that past case law about aggravation, acceleration and so on here's this help him case. The doctor used light duty so therefore you either tell the doctor you better make it sedentary even though it's a broad based label or I'm done, I get no benefits. Please, reverse this decision. Thank you. Thank you, counsel. Counsel, you may respond. Good morning, justices. Mr. Alexie, may it please the court. Elizabeth Capoletti on behalf of the employer, the Center for Sleep Medicine. I would respectfully submit to you that the commission's decision is supported by the manifest weight of the evidence. And I want to be clear about what is before this court on appeal. The only issue before this court on appeal relative to the evidentiary objection is whether or not it was appropriate for the arbitrator and commission to allow the testimony about the monetary value of the prior settlement. That is the only issue before this court. There's no issue regarding the motion to quash. In fact, the evidence that counsel is speaking about, the subpoena of the records from CXS, was not allowed into the record. The arbitrator actually denied the admission of those records into evidence. So the argument he's making that the commission erred because they did not fulfill their duty under section 19E to review all questions of law and effect which appear from the record. Correct. They abdicated their responsibility. What do you make of that? So the one issue that we're talking about is just one evidentiary issue as to whether or not the question could be posed to the claimant as to the monetary value of the settlement. That's the one objection. That's the only issue that's being appealed right now. And what I make of that is that the commission did its function under section 19E of the act. Because the commission is presumed to review only competent and relevant evidence. And there is no compulsion... Is it your argument that that was relevant evidence? Well, that was never brought as appeal before this court. There was no argument ever made as to whether or not the evidence was relevant or not. Should we presume that they only considered competent and relevant evidence when this was out there and they didn't expressly say anything about it? Correct. We should presume that they do that. But even so, the only remedy that the claimant requested at the commission was that the testament motive was stricter. Do you concede that it was error to introduce that evidence? Do I think it's relevant evidence? I think it is relevant to the fact that it goes to his current condition of ill-being. The amount of money that he got? Well, the amount of money that he got. There are several ways you should elucidate this. So whether or not the actual amount of money, no. I mean, is that actual? So could that be stricken? Yes, probably. Did that have absolutely any impact on the commission's decision? Well, he asked how do we know that. In the absence of any specific rule, how do we know that it didn't materially affect the outcome? Because they never once spoke about the monetary value in their decision. There's never once any mention of it. And in fact, the arbitrator states when the evidence is being offered into evidence regarding the actual monetary value that he says it's not relevant. The arbitrator specifically states that. And he never once in any way relies upon the monetary value of the settlement in formulating his decision. He does speak about the fact that there was settlement, but that testimony was solicited on direct exam. The arbitrator specifically does not mention at any time at any point in the decision regarding the monetary value of the settlement and says it's actually irrelevant. So, yes, there's a presumption that he did not rely upon that. And he doesn't rely upon it. But it's more than just a presumption from what you're saying. There's specific evidence that he did not rely upon it. Correct. Not just a presumption. There's not just a presumption. Because Mr. Lex is going to say the presumption clashes with reality, and he acts as his own definitive statement. Correct. But there's actually specific evidence about what the arbitrator said at the time. He actually, and I understand that Mr. Lex spoke at length about the motion to quash, but that, in fact, was granted. He didn't allow in that evidence. He said it wasn't relevant. He didn't allow in any of the evidence the claimant's prior settlement and the monetary value. And I think that's really what the important issue is here is, yes, yes, the claimant sustained an accident on April 17, 2007, while lifting a 300-pound patient. And, yes, he was paid TTD benefits. And, yes, he had a brief course of treatment. And then on May 10th of 2007, he went back to his doctor, who reviewed the MRI that Counsel was talking about. Dr. Mintz, in fact, reviewed that MRI and said it was completely normal. Found nothing wrong with the MRI except for the post-surgical changes from the fusion and the instrumentation. And Dr. Mintz, yes, released the claimant with restrictions. But those restrictions are the same restrictions that were in place since 2004. And that's really what the crux is here. There's no question that the claimant suffered from a preexisting low back condition. He was hurt in 2001. He underwent fusion surgery in 2003. He had cages and instrumentation implanted in him. And he had permanent restrictions of sedentary to sedentary life, meaning no lifting greater than 15 pounds on an occasional basis. And, yes, he laudably rehabilitated himself into a sleep technician. But, unfortunately, he rehabilitated himself into a job that he was not medically qualified to perform. And he never advised his employer of these permanent restrictions, which were never lifted. He conceded that he had those permanent restrictions. And, yes, when exceeding those restrictions, he hurt his back. But he had a temporary back strain. And the commission found that that condition resolved itself as of May 10th of 2007. And, in fact, when the claimant went back to see Dr. Miz again in April of 2009, there is discussion again about the restrictions. And Dr. Miz refers back to the 2004 FCE. He says, look, same restrictions from the 2004 FCE. Now, yes, does he talk a little bit more about bending, stooping, repetitive bending, stooping, crawling? There is a notation of that. But nowhere in Dr. Miz's medical records does he ever indicate that any of the restrictions that he talks about in 2009 and again in 2010 have anything but to do with the 2004 FCE. In fact, during Dr. Miz's evaluation of the claimant in May of 2009, he speaks of the claimant's chronic pain. He talks about his chronic pain. And he associates that to his instrumentation. And he speaks to the claimant about whether or not taking out the instrumentation would, in fact, relieve the chronic pain. And whether or not that that would be a reasonable surgery to help him with his chronic pain. There is nowhere in Dr. Miz's medical records that he ever associates any restrictions due to this temporary back strain that the claimant suffered in April of 2007. And I don't believe it's the respondent's burden to produce evidence to disprove the claimant's contention of an aggravation of a preexisting condition. The claimant bears the burden of proof to prove that the injury caused or aggravated the condition of ill being. And the commission found that the claimant failed to carry that burden. Certainly, there was an accident in April of 2007. There's no question. But the question was, was that accident in April of 2007 causative of his ongoing work restrictions in 2009, in 2010? And the claimant and the commission found that there was no proof of that. Dr. Miz never spoke to that. No physician ever spoke to that. And the commission, in fact, commented about the fact that there was no direct causation evidence offered by any physician. This is all just from the medical records. There was never any causation testimony. And I would submit to you that this Court and the Supreme Court has been clear that when you're talking about aggravations of preexisting conditions, we are talking about mainly medical questions and not legal ones. We need to look at what is the medical evidence. There is no medical evidence proving this aggravation. The medical evidence shows that, yes, he had a low back strain. But that low back strain subsequently resolved within a month, at which time he went back to baseline. And the restrictions which precluded him from going back to work in 2009, in 2010, were the same restrictions that he had since 2004 related to his preexisting condition and his fusion surgery. And in counsel's brief, they speak at length about Hawks and Ford, and that it's the burden for the employer to come forward with expert testimony. But I would submit to you that that's just not relevant in the context of workers' compensation, that those cases speak to negligence causes of action and really speak to the same body part rule from Boykin, and that it was just the shifting to the defendant that they would have to produce expert testimony of prior injuries to be relevant. That only came about after the plaintiff could prove proximate cause through medical evidence, which goes back to what you must do at the commission, that it's the claimant's burden under CISPRO to prove that the accident aggravated or accelerated the underlying condition, and that evidence just does not exist here. Dr. Miz said that the pain gave no opinion as to why the restrictions associated to either the low back, but in fact associated back to the preexisting condition, they were the same restrictions. So I would submit to you that the commission's decision is supported by the manifesto of the evidence and should be affirmed. Thank you, Counsel. Counsel, you may reply. Thank you, Your Honors. First of all, if we look at the commission decision, the only thing written in there, the only reasoning done, the only evaluation, the only review, if you will, is done by the dissenting commissioner, because we don't know what the other two thought because they just simply said, yeah, we affirm and adopt. So we're not benefited by any wisdom imposed by those three commissioners. We are imposed with the wisdom of one. Number two, counsel says this is an aggravation or acceleration of a preexisting condition which falls under the temporary category. There's no evidence in the record that I can find where it says a temporary aggravation. Number three, the fact of the matter is the MRIs of 2004 versus the one after this injury shows a significant anomaly at the L3-4 level. It's a physical change. That's not a matter of him complaining or spasms present and here it takes some muscle relaxants. The doctor at the company clinic in his chart notes, in his workup, calls it a work-related accident. That's why he was sent there by his employer. He was advised by Jan Kulp, stay off and go see a doctor, and they sent him to the clinic. The clinic treated him, yes, in a palliative, conservative fashion, but they treated him and ultimately said you should go back and see your surgeon. They kept him off of work. They restricted him. How can we now justify saying to this person, this working man, you diligently work to build your strength up? Counsel mentions the failure to disclose his limitations. There's a case in this state that says the man sabotaged his vocational rehabilitation program because during the course of interviews with prospective employers he'd say, well, you know, I've got a bad back and I can't lift much more. And the court said, hey, that's sabotaging your effort, pal. That's not right. The implication then drawn would be you can't talk about it unless there's a specific question asked. So if this man doesn't say anything, one can only assume that if he's working five days a week with a personal trainer to build up his strength and has the ability to do the job, where's the proof? An exam by a doctor? No, the fact that he functions successfully for all those years doing his duties until he encounters this 300-pound patient. The sequence of events shouldn't be ignored. And when we come to Ford v. Hawks, the premise of that case and the logic of all the ones preceding to that are simply this. If the defendant is going to come in and say, hey, look, the guy had a prior injury, that's not enough. You just don't get to throw it up on the wall of open space. The case says if you want to make that claim, if you want to prove that defense, if you want to diminish the impact of this current traumatic event, then bring in some evidence to show us the mechanical reasons why, the scientific discussion of why. There wasn't even an IME in this case. I think it should be reversed. Any questions? Thank you, Your Honor. Thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement and a written disposition will issue.